PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLY ANDERSON | ) | |
| | ) | CASE NO. 5:14cv1272 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CONNIE SUTTON, *et al.* | ) | |
| | ) | |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 81; 82; 88] |

Pending before the Court are a motion for summary judgment on Plaintiff Holly

Anderson's claims (ECF No. 81), a motion for summary judgment on Defendant Connie Sutton's

cross-claims (ECF No. 82), and a motion to strike evidence (ECF No. 88).  All were filed by

Defendants Sheriff David Doak and Portage County Board of Commissioners (collectively the

"County Defendants").  The Court has been advised, having reviewed the record, including the

parties' briefs and the applicable law.  For the reasons that follow, the Court (1) grants in part

and denies in part the County Defendants' motion to strike (ECF No. 88); (2) grants the County

Defendants' motion for summary judgment on Anderson's claims (ECF No. 81); and (3) denies

the County Defendants' motion for summary judgment on Sutton's cross-claims (ECF No. 82).

**I.  Factual and Procedural Background**

This case arises from events that occurred in the Portage County Jail on June 13, 2012.

Plaintiff Holly N. Anderson was housed in the female general population pod.  ECF No. 79 ¶ 11.

Defendant Connie Sutton was working as a corrections officer in the female pod during the

(5:14cv1272)

3:00–11:00 p.m. shift.  *Id.* ¶ 9.  On the night in question, the female pod was overcrowded to the point that inmates (including Anderson) were sleeping on mats outside of cells in the day space. Sutton was the only guard on duty for that pod.  ECF Nos. 66-1 at PageID# 775; 79 ¶ 17.

At around 8:00 p.m. that evening, Sutton announced that church services were being held for inmates in the female pod.  ECF No. 79 ¶ 12.  Anderson requested permission to attend services.  Sutton denied the request.  Anderson consulted her Inmate Handbook, and determined that Sutton should have allowed her to attend.  ECF No. 64-1 at PageID# 454.  Anderson and another inmate wanted a grievance form to report the incident, so Anderson went to Sutton's desk in the room adjoining the day space to request the form.  ECF Nos. 64-1 at PageID# 455; 66-1 at PageID# 874.  Both Anderson and Sutton testified that the other began to scream during this encounter.  ECF Nos. 64-1 at PageID# 455; 66-1 at PageID# 874–76.  Anderson testified that Sutton screamed at her to return to her mat.  ECF No. 64-1 at PageID# 455.  Sutton denied yelling at Anderson and insisted that Anderson ignored Sutton's request to stay behind a line surrounding Sutton's desk.  ECF No. 66-1 at PageID# 875.  Anderson denied crossing the line. ECF No. 64-1 at PageID# 507.  A video recording shows Anderson waving her arms while she spoke (presumably) with Sutton. Sutton is not shown in the video.  Eventually, Anderson returned to the day space, with Sutton following behind her.

Two cameras located in the day space continued recording the altercation between Anderson and Sutton.  From this point forward, both women are captured.  ECF No. 79 ¶ 15. The video (with accompanying audio) records Anderson and Sutton yelling at each other and calling each other names.

2

(5:14cv1272)

The first physical contact between the two occurs when Anderson jabs Sutton's right shoulder.  ECF No. 70, manually filed recordings at 8:06:08.[1]  Pretty quickly after that, Anderson and Sutton come face-to-face.  ECF No. 70, manually filed recordings at 8:06:10.  Sutton twice pushes Anderson outside of her "reactionary gap"—the arms' length space around a corrections officer.  After the first push, both Anderson and Sutton return to face-to-face almost immediately.  ECF No. 70, manually filed recordings at 8:06:13.  After the second push, Anderson grabs Sutton's hair, and the two begin to fight.  ECF No. 70, manually filed recordings at 8:06:16.  Over the next thirty seconds, Anderson and Sutton exchange blows.  Anderson and Sutton fall to the floor and their fight continues, with Sutton on top of Anderson.  Sutton appears to place a hand near Anderson's throat (the parties dispute whether Sutton choked Anderson).  ECF No. 66-1 at PageID# 920.  Sutton admits that she bit Anderson while on the ground.  Id.  Eventually, Sutton stands up, and Anderson kicks Sutton.  Sutton, then, twice attempts to administer OC (pepper) spray.  The parties dispute whether the first attempt is successful.  ECF No. 70, manually filed recordings at 8:06:53–:56.  Sutton's second attempt to administer the OC spray is obviously successful.[2]  ECF No. 70, manually filed recordings at 8:06:57–:59.  At this point, the altercation ends, and other corrections officers arrive in the day space shortly thereafter.

The Portage County Sheriff's Office conducted an investigation into the actions of Sutton, and determined that Sutton would be subjected to disciplinary proceedings as a result of

---

[1]  All time-stamps appear in the lower left corner of the video.

[2]  Comparing Anderson's reaction after the second administration to her reaction after the first, it appears the first attempt was a miss or not a full-on strike, while the second hit its mark.

(5:14cv1272)

the incident.  ECF No. 79 ¶ 21.  The Office concluded that Sutton "used unnecessary physical

force" when she "punched, choked, and bit the inmate."  ECF No. 63-1 at PageID# 404.  Sutton

was subsequently terminated, and her termination was not grieved by her union.  *Id.* at PageID#

352.  Sutton was later tried for and convicted of felonious assault, a second-degree felony.  *Id.* at

PageID# 325.  In reaching this verdict, the jury rejected Sutton's defense that she was justified in

her use of force.  *Id.* at PageID# 324–25.

Anderson filed a lawsuit against Connie Sutton, the Portage County Sheriff's Department,

Sheriff David Doak in both his official and individual capacity, and five John Does for violations

of her Eighth and/or Fourteenth Amendment right to protection from cruel and unusual

punishment.  ECF No. 1.  Plaintiff subsequently filed an amended complaint that substituted the

Portage County Board of Commissioners for Portage County Sheriff's Department, and to

eliminate the claim against Sheriff Doak in his individual capacity.  ECF No. 11.  The County

Defendants filed an answer and asserted a cross-claim against Sutton, seeking indemnification

for any losses incurred as a result of Anderson's lawsuit.  ECF No. 13.  Sutton answered both

Anderson's claim and the County Defendants' cross-claim, and asserted against the County

Defendants cross-claims seeking a declaration that the County had a duty to defend and

indemnify her in this litigation.  ECF No. 60.

Thereafter, the County Defendants moved for summary judgment on Anderson's claims

(ECF No. 81).  Following Anderson's opposition, the County Defendants also moved to strike

some of the evidence relied on by Anderson in opposing their motion for summary judgment

(ECF No. 88).  The County Defendants also moved for summary judgment on Sutton's cross-

(5:14cv1272)

claims.  ECF No. 82.  On January 19, 2016, the Court conducted an evidentiary hearing, during

which the parties presented testimony from witnesses and other exhibits as evidence.  ECF Nos.

102; 103.  All three motions are fully briefed and ripe for adjudication.

## II.  Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also* *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of material facts in dispute.  An opposing party may not

simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of

material fact to be resolved by a jury."  *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.

1995).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In

determining whether a factual issue is "genuine," the court must evaluate whether the evidence

could persuade a reasonable factfinder that the non-moving party is entitled to a verdict.  *Id.*

(5:14cv1272)

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  "[P]arties are not required to submit evidence in a motion for summary judgment in a 'form that would be admissible at trial.'"  *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 324); *accord Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003); *Brown v. Guardsmark, LLC*, No. 3:11-CV-02357, 2013 WL 3991911, at *4 n.1 (N.D. Ohio Aug. 2, 2013) ("Guardsmark's contention that 'hearsay evidence cannot be considered on a motion for summary judgment' is not entirely true."). "However, the substance must still comport with the rules of evidence[.]" *Shazor*, 744 F.3d at 960.

(5:14cv1272)

### III.  Analysis

#### A.  Motion to Strike Evidence

The Court first addresses the motion to strike evidence (ECF No. 88), as it bears on the

County Defendants' motion for summary judgment on Anderson's claims (ECF No. 81).  The

County Defendants have moved to strike the following evidence submitted by Anderson in

opposition to their motion for summary judgment: (1) Exhibit E and E1—Affidavit of Daniel

Leister and summary of personnel files (ECF No. 86-5), (2) Exhibit F—Connie Sutton's

Responses to Plaintiff's First Requests for Admission (ECF No. 86-6), and (3) Exhibits I, J, K, L,

which are inmate grievances concerning Sutton (ECF Nos. 86-9; 86-10; 86-11; 86-12).

#### 1.  The Summary of the Personnel Files

Anderson seeks to introduce a summary created by Anderson's attorney of 18 personnel

files produced by the County Defendants as evidence of a lack of training on excessive force.

The County Defendant move to strike this evidence as not complying with the requirements

under Fed. R. Evid. 1006 for admissibility of summaries.

The Sixth Circuit has held that summary evidence must meet five requirements to be

admissible under Fed. R. Evid. 1006: (1) the underlying documents are so voluminous that they

cannot be conveniently examined in court; (2) the proponent of the summary must have made the

documents available for examination or copying at a reasonable time and place; (3) the

underlying documents must be admissible in evidence; (4) the summary must be accurate and

nonprejudicial; and (5) the summary must be properly introduced through the testimony of a

witness who supervised its preparation.  *United States v. Moon*, 513 F.3d 527, 545 (6th Cir.

7

(5:14cv1272)

2008).  With respect to the third prong—that the underlying documents must be admissible into evidence—the Sixth Circuit requires that all documents underlying the summary must be admissible.  *United States v. Jamieson*, 427 F.3d 394, 411 (6th Cir. 1994).

The County Defendants argue that the underlying documents are not admissible because "the entire personnel files . . . are largely irrelevant" and therefore not admissible.  ECF No. 88 at PageID# 1664 (citing Fed. R. Evid. 402).  The County Defendants argue that information both contained in the summary (unrelated disciplinary action and personnel evaluations) and omitted (polygraph tests, background checks, and tax withholdings) have no bearing on Anderson's excessive force claim.  ECF No. 88 at PageID# 1665.  They also urge that the relevant portions of the personnel files, those relating to training, have already been included in the record.  ECF No. 92 at PageID# 2031 (stating that ECF No. 89-1 contains the corrections officers' training log, records, and training certificates).  Anderson concedes this latter point but argues that "[t]he inclusion or exclusion of these 'largely irrelevant' materials . . . in no way, shape, or form, impacts whether this Court should consider the remaining portions of the personnel files or Exhibit E-1."  ECF No. 91 at PageID# 2004.  It appears from this quibble that the parties misconstrue Rule 1006.  Fed. R. Evid. 1006.[3]  The Court need not resolve that issue because the parties agree that what is relevant is otherwise included in the record.  Therefore, the Court strikes Exhibit E and E1—Affidavit of Daniel Leister and summary of personnel files.  *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (affirming the district court's decision to

---

[3] Only those documents summarized need be admissible.  It is of no moment if other items in the personnel files are not admissible, if they are not included in the summary.

(5:14cv1272)

strike affidavits, submitted in opposition to summary judgment made "on information and belief," as not creating a genuine issue of material fact);

*In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908, 911 (N.D. Ohio 2009) ("[T]he court retains liberal discretion to strike filings as it deems appropriate." (internal quotation marks omitted)).

### 2. Sutton's Admissions

The County Defendants also request that the Court disregard Sutton's admissions regarding the adequacy of her training (ECF No. 86-6).  The County Defendants argue that one defendant's admissions are not binding on a co-defendant.  ECF No. 88 at PageID# 1668. Anderson argues that the case law cited by the County Defendants is distinguishable because each case concerns deemed admissions, and that the Court may consider a co-defendant's admissions when determining whether a genuine issue of material fact exists.  ECF No. 91 at PageID# 2011.

The case law relied on by the County Defendants pertains to deemed admissions–those presumed when no response is made.  Here, the County Defendants responded to Anderson's requests for admissions.  ECF No. 37.  As such, the County Defendants' motion does not offer a basis for striking the evidence, that is, Exhibit F—Connie Sutton's Responses to Plaintiff's First Requests for Admission—from the Court's consideration.  The motion, therefore, is denied.

### 3. The Inmate Grievance Forms

The County Defendants move to strike inmate grievances concerning Sutton (ECF Nos. 86-9; 86-10; 86-11; 86-12).  The County Defendants argue that the inmate forms are inadmissible

9

(5:14cv1272)

hearsay not within any exception contained within the Federal Rules of Evidence.  ECF No. 88 at PageID# 1667.  Anderson argues that the grievance forms are offered not to prove the truth of the matter asserted, but rather that the grievances filed against Sutton placed the County Defendants on notice about Sutton's lack of training.  ECF No. 91 at PageID# 2010.

Hearsay is an out of court statement offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Statements not offered to prove the truth of the matter asserted and not otherwise objectionable are admissible.  *See id.*  In this case, the Court may consider the grievance forms for their non-hearsay purpose: whether the County Defendants were on notice about Sutton's lack of training.  The Court denies the motion as to Exhibits I, J, K, L, inmate grievances concerning Sutton,

### 4.  Summary

The Court strikes the summary of the personnel records offered under Fed. R. Evid. 1006. The Court denies the County Defendants' motion as to Defendant Sutton's admissions and the inmate grievance forms, and will consider them for the purposes described above and to the extent that they assist the Court's analysis of Anderson's claims against the County Defendants.

### B.  Motion for Summary Judgment on Anderson's Claims

The County Defendants have moved for summary judgment on Anderson's claims.  ECF No. 81.  They argue that Anderson has not demonstrated that the county has acted to deprive her of any constitutional rights.

Section 1983 provides a cause of action to any person deprived "any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  A governmental entity, however,

10

(5:14cv1272)

cannot be held vicariously liable for the actions of its employees.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").  Rather, a governmental entity can only be held liable for its own conscious wrong-doing; namely, when an official policy or custom actually serves to deprive the individual of her constitutional rights.  *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)).  A custom or policy may be unconstitutional either on its face, or by implementation in a manner that results in constitutional violations.  *Id.* (quoting *Gregory*, 444 F.3d at 752).  When proceeding under the latter route, the plaintiff must also demonstrate that the municipal action was taken with deliberate indifference.  *Id.* (quoting *Gregory*, 444 F.3d at 752).  Simple or heightened negligence will not suffice to establish deliberate indifference.  *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  Rather, a plaintiff must show that the actor consciously disregarded a known or obvious consequence of the action.  *Brown*, 520 U.S. at 410.

To demonstrate that a policy or custom caused a constitutional violation, a plaintiff can show (1) the municipality's legislative enactments or official policies, (2) actions taken by officials with final decision-making authority, (3) a policy of inadequate training or supervision, or (4) a custom of tolerance or acquiescence of federal violations.  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  In this case, Anderson argues that the County Defendants' failure to train Sutton caused the violation of Anderson's constitutional rights.  ECF

11

(5:14cv1272)

No. 86 at PageID# 1496–99.  Alternatively, Anderson argues that the County Defendants acquiesced to Sutton's conduct.  ECF No. 86 at PageID# 1500.  For the reasons that follow, neither argument can survive summary judgment.

### 1.  Failure to Train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Oklahoma v. Tuttle, 471 U.S. 808, 822–23 (1985)).  A governmental entity will only be liable under a failure to train theory if the actions of Sutton can be attributed to the County's failure to train her, and the failure amounts to deliberate indifference to inmates like Anderson.  City of Canton, 489 U.S. at 387.  The County Defendants will be liable for failure to train if Anderson can establish three elements: (1) "that a training program is inadequate to the tasks that the officers must perform," (2) "that the inadequacy is the result of the [County]'s deliberate indifference," and (3) "that the inadequacy is closely related to or actually caused the plaintiff's injury." Plinton v. Cty. of Summit, 540 F.3d 459, 464 (6th Cir. 2008) (quoting Hill v. McIntyre, 884 F.2d 271, 275 (6th Cir. 1989)).

In the failure to train context, deliberate indifference can be shown in two ways. Anderson can show deliberate indifference "through evidence of prior instances of unconstitutional conduct demonstrating that the County had notice that the training was deficient and likely to cause injury but ignored it." Harvey v. Campbell Cty., Tenn., 453 F. App'x 557, 562 (6th Cir. 2011) (citing Plinton, 540 F.3d at 464).  Alternatively, Anderson can show deliberate indifference "through evidence of a single violation of federal rights, accompanied by

12

(5:14cv1272)

a showing that the County had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.* at  562–63 (citing *Plinton*, 540 F.3d at 464).  Under this latter avenue, "a supervisory official or municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable[.]" *Thomas v. Novicky*, 2014 WL 6896576, at *8 n.6 (N.D. Ohio Dec. 8, 2014) (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982); *see also City of Canton*, 489 U.S. at 390 & n.10 (using as a hypothetical example "the need to train officers in the constitutional limitations on the use of deadly force can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights") (internal quotations and citations omitted)).

Anderson has not established deliberate indifference.  As the County Defendants observe, there is no evidence in the record of any other incidents of excessive force committed by either Sutton or any other corrections officer.  ECF No. 89 at PageID# 1682.  Anderson offers no evidence of a persistent pattern of excessive force being used by Portage County Sheriff's Office employees.

Nor has Anderson shown "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Hays*, 668 F.2d at 874.  In this case, it is undisputed that the County operates a six-week field training program.  The program involves both a review of the policy and procedure manual and a shadowing component in which the new hire performs her job with a field training officer.  ECF No. 67-1 at PageID# 1040–41.

13

(5:14cv1272)

Additionally, each new hire is required to complete a full-time, five-week training program, called the Ohio Basic Corrections Training Course, taught by the Ohio Peace Officer Training Academy.  ECF No. 67-1 at PageID# 1025–26.  Both the field and academy training instruct the new officers on the authorized use of force.  Moreover, the County's manual contains a use of force policy, which states that "the least amount of force necessary to accomplish the legitimate correctional objective must be used, and once the objective is accomplished, the force must stop."  ECF No. 79-1 at PageID# 1201.  Portage County also offers in-service training on the use of force, through a certified instructor, Sergeant Robert Symsek, modeled after the Ohio Peace Office Training Academy curriculum.  ECF No. 67-1 at PageID# 1043–49.  The in-service training includes hands-on instruction on the proper technique for cell extraction, one of the more violent interactions that a corrections officer can have with an inmate.  ECF No. 67-1 at PageID# 1059–62.  Finally, Portage County maintains a collection of training videos that address the proper use of force.  ECF No. 67-1 at PageID# 997–98.  In light of this evidence, Anderson has failed to show that the County Defendants failed to train its officers.

Plaintiff argues that the County Defendants failed to comply with Ohio Minimum Standards for Jails and internal policies when they failed to document in-service training for officers' use of force.  ECF No. 86 at PageID# 1496–98.  Anderson argues that her summary of the Portage County personnel files reveal that the County Defendants do not monitor the amount of training that corrections officers receive per year.  This gap, Anderson argues, would allow a jury to infer that there is a systematic failure to train corrections officers in the use of force.

Anderson's argument ignores established Sixth Circuit law that only constitutional

14

(5:14cv1272)

violations are actionable under § 1983.  Violations of state regulations or correctional institute policies that are not also violations of federal constitutional rights are not actionable.  *E.g., Davis v. Scherer*, 468 U.S. 183, 193 (1984) (violations of state regulations are not actionable under § 1983); *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 421 (6th Cir. 2015) ("Failure to comply with jail policy is not a per se constitutional violation."); *Laney v. Farley*, 501 F.3d 577, 583 n.2 (6th Cir. 2007) (finding that a violation of the Wilson County Board of Education's policy granting students notice before suspension would not support a § 1983 claim).  In fact, as the County Defendants observe, the Sixth Circuit has rejected Anderson's theory that a § 1983 claim may be based on the violation of the Ohio Minimum Standards for Jails.  *See Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992) (rejecting the argument that deliberate indifference can be shown through evidence that Defendants failed to adhere to the Ohio Minimum Standards for Jails requirements for monitoring prisoners suspected of having suicidal tendencies).

Moreover, Anderson does not dispute the testimony from Sgt. Symsek detailing the amount of training offered to corrections officers both at the start of and throughout their employment with Portage County.  Without contesting this evidence, the most that can be inferred from the lack of documentation in officers' personnel files is that the County Defendants could have been more thorough in recording their corrections officers' on-going training.  This negligence, however, falls short of establishing deliberate indifference.  *Brown*, 520 U.S. at 407 (1997) (stating that "[a] showing of simple of even heightened negligence will not suffice" to establish deliberate indifference).  As important, the record-keeping inadequacies do not call into

(5:14cv1272)

question the combined 11-week training that new corrections officers receive through the Ohio

Peace Officer Training Academy and through shadowing a Portage County employee.  ECF No.

67-1 at PageID# 1025–26, 1040–41.  The record before the Court, therefore, does not reveal a

failure to train officers.  *Hays*, 668 F.2d at 874.

## 2.  Inaction/Acquiescence Theory

To prevail under an inaction or acquiescence theory of municipal liability, a plaintiff must

prove: (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or

constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the

unconstitutional conduct, such that their deliberate indifference in their failure to act can be said

to amount to an official policy of inaction; and (4) that the [defendant's] custom was the "moving

force" or direct causal link in the constitutional deprivation.  *City of Chattanooga*, 398 F.3d at

429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).  The Sixth Circuit

has cautioned against "infer[ring] a municipal-wide policy based solely on one instance of

potential misconduct" lest municipal liability collapse into *respondeat superior*.  *City of*

*Chattanooga*, 398 F.3d at 429.

As mentioned above, there is no evidence in the record of either Sutton or any other

corrections officer at the Portage County Jail using excessive force against an inmate.  Anderson,

therefore, has not established a clear and persistent pattern of excessive force necessary to hold

the County Defendants liable under an inaction or acquiescence theory of municipal liability.

Relatedly, because there was no clear and persistent pattern of excessive force, the County

Defendants could not have been on notice of such a pattern existing.

16

(5:14cv1272)

Anderson points to performance reviews of Sutton and inmate grievance forms as evidence that the County Defendants were aware of Sutton engaging in a clear and persistent pattern of illegal activity.  The evidence reveals no such pattern.  Sutton's performance reviews do not indicate that Sutton had prior issues with using excessive force; the four performance reviews from 2009 to 2011 indicate that Sutton demonstrated satisfactory "understanding of [her] position requirements," "the essential knowledge and skills required for the position," and staying current on the "knowledge of laws, regulations, and/or special procedures" required for her job.  ECF No. 86-8.  The areas of Sutton's performance that needed improvement were being to work on time, accepting directions in a positive and productive manner, her team work and cooperation, and problem-solving.  *Id.*  None of the comments in Sutton's review prove that the County Defendants were on notice that excessive force was an issue with Sutton.

Neither the existence of or the content of the inmate grievances demonstrate a clear and persistent pattern of excessive force, or any notice on the part of the County Defendants.  The forms filed by inmates Anthony James (ECF Nos. 86-10; 86-11) and John Hovanec (ECF No. 86-12) do not mention that Sutton used excessive force; the inmates merely complain that they believed Sutton unfairly placed them in lockdown.  Only one, the grievance filled out by Amanda Sloey, mentions excessive force: Sloey claimed that Sutton had choked her.  ECF No. 86-9.  The Sloey form does not serve as notice or reveal deliberate indifference, however, because Portage County promptly investigated Sloey's complaint and cleared Sutton of any wrongdoing when it was revealed that Sloey self-inflicted the marks on her neck.  ECF No. 89-2 at PageID# 1987.  Anderson has not shown that the County Defendants were aware of a clear and persistent pattern

17

(5:14cv1272)

of excessive force.

### 3. Summary

A municipality may not be held vicariously liable under § 1983 for the actions of its

employees.  *Monell*, 436 U.S. at 691.  A plaintiff must show that a policy or custom had the

effect of depriving her constitutional rights.  When the evidence is viewed in the light most

favorable to Anderson, she is unable to demonstrate that the County Defendants had a policy or

custom of failing to train its officers or acquiescence in constitutional violations.  Accordingly,

the County Defendants are entitled to summary judgment on Anderson's claims.  ECF No. 81.

### C.  Motion for Summary Judgment on Sutton's Cross-Claims

The County Defendants have also moved for summary judgment on Sutton's cross-claims

(ECF No. 82).  They argue that they are entitled to judgment on Sutton's cross-claims because

she is unable to show that she is entitled to either a defense in the instant case, or indemnification

in the event of an adverse judgment.

Ohio Revised Code § 2744.07(A)(1) governs the circumstances in which a political

subdivision must defend its employees in litigation and provides:

> Except as otherwise provided in this division, a political subdivision shall provide
> for the defense of an employee, in any state or federal court, in any civil action or
> proceeding which contains an allegation for damages for injury, death, or loss to
> person or property caused by an act or omission of the employee in connection
> with a governmental or proprietary function. The political subdivision has the
> duty to defend the employee if the act or omission occurred while the employee
> was acting both in good faith and not manifestly outside the scope of employment
> or official responsibilities. Amounts expended by a political subdivision in the
> defense of its employees shall be from funds appropriated for this purpose or from
> proceeds of insurance. The duty to provide for the defense of an employee
> specified in this division does not apply in a civil action or proceeding that is
> commenced by or on behalf of a political subdivision.

18

(5:14cv1272)

To be entitled to a *defense*, the employee—Sutton—must demonstrate that she (1) acted in good faith and (2) not act manifestly outside the scope of employment. "[W]hether a political subdivision owes a duty to defend an employee is a fact-sensitive issue." *Whaley v. Franklin County Bd. of Comm'rs*, 752 N.E.2d 267, 273 (Ohio 2001).

Subsection (A)(2) governs the circumstances in which a political subdivision must indemnify an employee. To demonstrate an entitlement to indemnification, Sutton must show that she "was acting in good faith and within the scope of [her] employment or official responsibilities." Ohio Revised Code § 2744.07(A)(2). "[T]here is a clear distinction drawn in R.C. 2744.07 between the standards 'not manifestly outside the scope' of employment in R.C. 2744.07(a)(1) and 'within the scope' of employment in R.C. 2744.07(A)(2)." *Whaley*, 752 N.E.2d at 273. "By adopting two such varying standards, the General Assembly clearly intended that the standard applicable to the duty to defend in R.C. 2744.07(A)(1) be much broader in scope than the standard applied to the duty to indemnify in R.C. 2744.07(A)(2)." *Id.*

As the County Defendants have moved for summary judgment, all facts are construed in the light most favorable to Sutton, "except when the record 'blatantly contradict[s]' it 'so that no reasonable jury could believe it.'" *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 378–80 (2007)).

### 1. Good Faith

Sutton must demonstrate a genuine issue of material fact as to whether she acted in good faith. The County Defendants argue that she cannot do so, because the undisputed facts show that Sutton acted in bad faith. In Ohio, "[a] lack of good faith is the equivalent of bad faith[.]"

19

(5:14cv1272)

*Buckeye Union Ins. Co. v. New England Ins. Co.*, 720 N.E.2d 495, 499 (Ohio 1999) (quoting

*Slater v. Motorists Mut. Ins. Co.*, 187 N.E.2d 45 (Ohio 1962)).  Although not amenable to precise

definition, bad faith requires more than bad judgment or negligence on the part of the actor.

*Jackson v. Butler County Bd. of Comm'rs*, 602 N.E.2d 363, 367 (Ohio Ct. App. 1991).  "Bad

faith has been defined as a dishonest purpose, moral obliquity, conscious wrongdoing, breach of

a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson

v. McDonald*, 760 N.E.2d 24, 29 (Ohio Ct. App. 2001).

The County Defendants rely on the video of the incident to argue that Sutton indisputably

acted in bad faith.  They argue that the video indisputably shows that Sutton called Anderson

names, threw the first punch, placed her hands on Anderson's neck so as to choke her, and used

OC spray on Anderson when she was not resisting Sutton—all of which evince bad faith.  The

County Defendants also argue that Sutton's conviction for felonious assault negates her claim

that she acted in good faith.  ECF No. 82 at PageID# 1458–59.

The Court has viewed the video and disagrees.[4]  The video does not indisputably support

the County Defendants' argument.  In fact, the video reveals details that, when viewed in the

light most favorable to Sutton, support Sutton's argument that she acted in good faith.  *Guarino,

980 F.2d at 403*.  Before reentering the day space, the video shows Anderson gesticulating

towards Sutton's desk.[5]  This lends support to Sutton's version of the encounter: Anderson

---

[4]  Video footage was captured by two cameras (with audio) from different vantage points.
The Court reviewed all video recorded evidence and uses the term "video" generically.

[5]  Again, Sutton is not visible in this early part of the video.

20

(5:14cv1272)

verbally attacked her for not allowing Anderson to attend church services and, while doing so, Anderson physically crossed a line on the floor that inmates are required to stand behind.  It is also true that Sutton called Anderson names.  While unprofessional, the name calling was not unprovoked or unmatched.  The video shows that Anderson continued to argue with Sutton and call her names in the day space after Sutton ordered Anderson to return to her mat.  It cannot be understated that, Anderson, not Sutton, escalated, what had been just a verbal altercation, into a brawl when Anderson (1) poked Sutton in the right shoulder and (2) repeatedly recoiled into Sutton's reactionary gap, after Sutton twice shoved her away, using a tactic that is within the discretion of corrections officers if the situation calls for it.  After the second push out of the reactionary gap, Anderson pulls Sutton's hair.  From that point forward, Anderson and Sutton fight for thirty seconds.  This physical encounter culminates with Sutton's two attempts at calming Anderson with the OC spray.  All of this all occurred while Sutton was the lone corrections officer on in a pod housing fifty-two inmates—well above the thirty-four inmate capacity.  ECF No. 66-1 at PageID# 867.  In sum, the video paints a largely unambiguous factual picture that is contrary to that suggested by the County Defendants.  This precludes summary judgment.  *See* *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that the lower court "should have viewed the facts in the light depicted by the videotape")

        Also, Sutton's conviction for felonious assault does not warrant summary judgment.  The County Defendants argue that the requisite *mens rea*, knowingly, requires proof that Sutton was "aware that [her] conduct will probably cause a certain result or will probably be of a certain nature."  R.C. § 2901.22(B).  This is a different standard than for showing bad faith under Ohio

21

(5:14cv1272)

law.  Knowing conduct does not automatically imply that a person has acted with "dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive or ill will."  *McDonald*, 760 N.E.2d at 29.  The felony conviction does not have the import suggested by the County Defendants in this analysis.[6]

The County Defendants are free to argue at trial the version of the facts that they believe suggest Sutton acted in bad faith.  At summary judgment, however, their arguments are unavailing.  Taken in the light most favorable to Sutton, the evidence would allow a jury to conclude that she acted in good faith during her encounter with Anderson.  Accordingly, a genuine issue of material fact remains as to whether Sutton acted in good faith.

### 2.  Scope of Employment

Sutton must also demonstrate a genuine issue of material fact as to whether her conduct is not manifestly outside the scope of her employment (to trigger the duty to defend) and whether her conduct is within the scope of her employment (to trigger the duty to indemnify).  The Ohio Supreme Court has defined the term "manifestly" for the purposes of R.C. § 2744.07 as meaning "plainly, obviously."  *Whaley*, 752 N.E.2d at 272.  "Conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business."  *Martin v. Cent. Ohio Transit Auth.*, 590 N.E.2d 411, 417 (1990).  Conversely, conduct falls outside the scope of employment if the conduct is so divergent so as to sever the relationship of employer-employee.  *Thomas v. Ohio Dep't of Rehab. & Corr.*, 548 N.E.2d 991, 994 (1988).  The "determination of

---

[6]  The County Defendants appropriately do not argue that the conviction has issue-preclusive effect in this case.

(5:14cv1272)

whether conduct is within the scope of employment or outside the scope of employment necessarily turns on the fact-finder's perception of whether the [employee] acted, or believed himself to have acted, at least in part, in his employer's interests." *Ohio Gov't Risk Mgmt. v. Harrison*, 874 N.E.2d 1155, 1160 (Ohio 2007); *see also Cantwell v. Franklin County Bd. of Comm'rs*, 2012-Ohio-2273, ¶ 16 (Ohio Ct. App. 2012) (applying *Harrison* in a case involving the duty to defend under R.C. § 2744.07).  "Only when reasonable minds can come to but one conclusion does the issue regarding scope of employment become a question of law." *Osborne v. Lyles*, 587 N.E.2d 825, 829 (Ohio 1992).

In their motion for summary judgment, the County Defendants argue that Sutton's assault of Anderson did not serve any legitimate purpose.  They argue that the video clearly shows that the force Sutton used was unjustified, in violation of the policies that the County had in place to govern the use of force, and ultimately led to a conviction for felonious assault.  These facts, the County Defendants argue, completely severed the employment relationship Sutton had with the County, placing her conduct outside the scope of employment.

The County Defendants have not provided any case law for the proposition that a corrections officer's use of force, later deemed to be excessive, is *per se* outside the scope of the officer's employment.  To the contrary, Ohio law supports Sutton's contention that she acted within the scope of her employment.  Conduct is found to be outside the scope of a corrections officer's employment only when it furthers no interest of the employer.  For example, the officer in *Cantwell v. Franklin County Bd. of Comm'rs*, 2012-Ohio-2273 (Ohio Ct. App. 2012) was found to have acted outside the scope of employment when he served an inmate a sandwich that

23

(5:14cv1272)

had been touched to another inmate's genitals because it was "plainly unauthorized by appellee and obviously outside of appellant's authorized duties," notwithstanding the officer's claim that he had a duty to serve inmates meals.  *Cantwell*, 2012-Ohio-2273 at ¶ 16.  Similarly, the officer in *Jodrey v. Ohio Dep't of Rehab. & Corr.*, 2013-Ohio-289, ¶ 3 (Ohio Ct. App. 2013) was found to be acting outside the scope of employment when he dumped a paralyzed inmate from a wheelchair without provocation because, under the circumstances, the officer could not claim the use of force was authorized.  *Jodrey*, 2013-Ohio-289 at ¶ 20.

Conversely, Ohio courts find conduct to be within the scope of the corrections officer's employment when it furthers an interest of the employer, even if the officer goes too far in furtherance of that interest.  The officer in *Elliott v. Ohio Dep't of Rehab. & Corr.*, 2001-Ohio-172 (Ohio Ct. Claims 1992) punched an inmate who failed to show up for work the previous day, yet his conduct was deemed to be within the scope of his employment: "The use of force by Turner, although heedless and unnecessary, was not outside the authority of a corrections officer charged by the defendant to maintain and discipline an inmate population." *Elliott*, 2001-Ohio-172 at *3.  In *Thomas v. Ohio Dep't of Rehab. & Corr.*, 548 N.E.2d 991 (1988), the officer acted within the scope of his employment when he struck a disobedient inmate with a slapjack (a leather sack filled with lead balls), even though this use of force was later deemed to be unjustified.  *Thomas*, 548 N.E.2d at 994.  In *Trease v. Ohio Dep't of Rehab. & Corr.*, 2005-Ohio-733 (Ohio Ct. Claims 2005), the officer (Trease) was denied representation in a lawsuit in which an inmate alleged that Trease kneed the inmate in his eye during an altercation.  The Court of Claims ruled that the conduct was not manifestly outside the scope of

24

(5:14cv1272)

employment or performed in bad faith because the use of force is a necessary part of a corrections officer's job, and "the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Trease v. Ohio Dep't of Rehab. & Corr.*, 2005-Ohio-733 (Ohio Ct. Claims 2005) (quoting *Mason v. Ohio Dep't of Rehab. & Corr.*, 593 N.E.2d 482, 486 (Ohio Ct. Claims 1990)).

In the instant case, Sutton used force against Anderson *after* Anderson refused commands from Sutton and touched Sutton in an offensive and combatant manner.  Portage County has a Use of Force Policy that dictates when and how a corrections officer may use force.  ECF No. 103-4.  The policy authorizes the use of force for, among other reasons, "controlling or subduing an inmate who refuses to obey jail rules" and "for purposes of self-defense."  *Id.* at PageID# 2277.  This is consistent with the scope of authority Ohio Administrative Law gives corrections officers to use force in discharge of their duties.  "As the legal custodians of a large number of potentially dangerous inmates, prison officials and employees are confronted with situations in which it may be necessary to use force to control inmates or respond to resistance."  Ohio Admin. Code 5120-9-01(A).  Corrections officers deciding whether to use force "shall evaluate the need to use force based on the circumstances as known and perceived at the time it is considered"; "may force only to the extent deemed necessary to control the situation"; and may only use "the amount of force reasonably necessary under the circumstances to control the situation."  Ohio Admin. Code 5120-9-01(C)(1)(a) & (b).  Sutton's conduct in this case is more in line with the officers in *Elliot*, *Thomas*, and *Trease* than those in *Cantwell* and *Jodry*.  Even though Sutton's use of force was subsequently determined to be unjustified by prison authorities

25

(5:14cv1272)

and a jury, it was nonetheless in furtherance of the jail's business of maintaining order over inmates. This is sufficient to survive summary judgment.

"An employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment." *Elliott v. Ohio Dep't of Rehab. & Corr.*, 637 N.E.2d 106, 108 (Ohio Ct. App. 1994); *see also Thomas*, 548 N.E.2d at 994 ("Contrary to appellant's argument, the fact that Roberson's use of force was determined unjustified does not automatically take his actions outside the scope of his employment.").  Ohio law and jail policy authorized Sutton the discretion to use force as part of her job as a corrections officer.  Whether her conduct was so divergent  as to sever the employer-employee relationship is a factual dispute to be decided by a jury.  *Osborne*, 587 N.E.2d at 829.  Accordingly, a genuine issue of material fact as to whether Sutton's conduct was within the scope of her employment.

### IV.  Conclusion

For the forgoing reasons, the Court (1) grants in part and denies in part the County Defendants' motion to strike (ECF No. 88); (2) grants the County Defendants' motion for summary judgment on Anderson's claims (ECF No. 81); and (3) denies the County Defendants' motion for summary judgment on Sutton's cross-claims (ECF No. 82).

The matter shall proceed to trial.  A separate Trial Order will issue.

IT IS SO ORDERED.


March 31, 2016                             */s/ Benita Y. Pearson*
Date                                        Benita Y. Pearson
                                            United States District Judge

26